# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1178

**FREDA J. GRAVES LACOMBE**

**VERSUS**

**PAUL WILRAY LACOMBE**

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 01-C-1780-D
HONORABLE DONALD WAYNE HEBERT, DISTRICT JUDGE

**********

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and J. David Painter, Judges.

**REVERSED IN PART; AFFIRMED IN PART.**

W. Glenn Soileau
P. O. Box 344
Breaux Bridge, LA 70517
Telephone: (337) 332-4561
COUNSEL FOR:
    Defendant/Appellant - Paul Wilray LaCombe

Laura L. Davenport
Laura L. Davenport, LLC
730 Jefferson Street
Lafayette, LA 70501
Telephone: (337) 231-1397
COUNSEL FOR:
    Plaintiff/Appellant - Freda J. Graves LaCombe

**THIBODEAUX, Chief Judge.**

The defendant, Paul Lacombe, appeals from judgments which judicially accepted the sworn detailed descriptive list of the plaintiff, Freda Lacombe, for use in partitioning the community property. Finding that the trial court's decision was correct, but that the language in the judgment was too expansive, we affirm in part and reverse in part the judgments of the trial court.

## I.

## ISSUES

We will decide whether the trial court manifestly erred in accepting the plaintiff's sworn descriptive list for use in partitioning the community of assets and liabilities between the parties.

## II.

## FACTS AND PROCEDURAL HISTORY

In 2001, Freda filed a petition for divorce under La.Civ.Code art. 102.[1] She averred that she was in need of and entitled to "spousal support as agreed" in the amount of $1,400.00 per month "to pay bills of the community and to live." Freda asked to remain in the family home, sought temporary and permanent spousal support, and requested a rule to show cause on these issues. Paul and Freda had previously executed a hand-written agreement regarding the $1,400.00 payments and certain items of community property. A judgment of divorce was granted in May 2002.

In February 2009, Paul petitioned for a judicial partition of the remaining community property, seeking reimbursement for payments made and funds expended by him for the benefit of the community. On February 17, 2009,

---

[1]When there are no minor children, as in this case, La.Civ.Code arts. 102 and 103.1 require proof of living separate and apart for 180 days after service of process of the petition.

the parties were ordered to file Detailed Descriptive Lists within forty five days. Neither party complied.

In September 2009, Freda filed a "Rule for Final Support." She asserted that, pursuant to the mutual agreement in 2001, Paul had paid the $1,400.00 per month (in the form of a payment of $700.00, a payment of $270.00, and payment of the house note at $430.00); however, he stopped the payments in November of 2008, "suddenly and without warning."

After a hearing, the trial court entered a written judgment on April 30, 2010, ordering Paul to pay Freda spousal support of $1,000.00 per month.

In May 2010, Paul hired a new attorney and filed another petition for partition, offset, reimbursement, reduction of support, and misappropriation of funds, seeking an offset for the $1,400.00 payments to Freda, pursuant to the hand-written agreement. He also asserted that Freda had used the funds for personal use instead of paying off community debts.

On June 7, 2010, Freda filed a motion for contempt, asserting that Paul had not paid any of the ordered support of $1,000.00 per month. Freda further asserted that Paul was in contempt; that her income was only $343.00 per month [social security disability]; and that she was entitled to attorney fees. Freda filed various exceptions to Paul's petition for partition, arguing that issues of income and peremption were res judicata, having been decided in a previous hearing. She further argued that Paul had no right of action to file a duplicative petition for partition, having filed a petition for partition of the same property in February 2009.

On December 29, 2010, the trial court entered judgment finding Paul in contempt of court for failure to pay Freda spousal support in the amount of $5,266.67. The judgment awarded Freda reimbursement from Paul, to be deducted from Paul's one-half interest in the proceeds from the sale of the marital home.

2

This judgment attached "Written Stipulations" signed by the parties on December 10, 2010, and "approved and affirmed" by the trial court on December 29, 2010.[2]

On April 4, 2011, Freda filed a detailed descriptive list indicating that the home had been sold as of March 29, 2011. The movable property included a one-half interest in the $59,606.82 proceeds of the sale of the home already deposited in the registry of the court. Freda estimated total remaining community liabilities at $7,500.00. She calculated net community assets at $48,781.82. She claimed total reimbursements of $50,757.16 ($40,700.00 for one half of bills paid to seven creditors over eighty-nine months; $3,291.19 for one half of cost of home improvements; and $6,765.97 in closing costs). Freda's descriptive list showed that she owed reimbursement to Paul of $12,806.00 for bills over a twenty-eighth-month period, but it provided no detail as to the source of these bills. Paul still had not filed a sworn descriptive list.

On April 28, 2011, Freda filed a rule to show cause why her descriptive list should not be accepted and deemed a judicial determination of the community assets and liabilities. The rule was set for May 31, 2011.

Paul's attorney, due to various missteps in his law office, did not appear for the hearing or file a detailed descriptive list. In oral reasons at the hearing, the trial court granted Freda's request to have her descriptive list judicially accepted in determining the assets and liabilities of the former community property regime. Freda prepared a written judgment which was not signed at the time.

A week after the hearing, Paul's attorney filed Paul's descriptive list, asserting that Paul was due a one-half interest in the sale proceeds of the home;

_____

[2]The first four signed stipulations, attached to the December 2010 judgment, state that: (1) Freda did not misappropriate funds because there was never an order commanding her to pay community obligations with funds paid to her by Paul; (2) the court's January 11, 2010 oral judgment found that prescription/peremption did not apply to Freda's request for spousal support; (3) the same judgment found that Paul's payments of $1,400.00 per month were voluntary spousal support payments; (4) no material change of circumstance had occurred which would warrant modification of spousal support at the time.

that there were *no* remaining community debts; and, that Paul had paid community liabilities of $82,227.07, for which he was due a one-half reimbursement of $41,113.54. Paul's attorney also filed a motion to have the rule reset, asserting that his law office had moved the previous October to 219 W. Bridge Street, Breaux Bridge, that Freda's attorney had used the old address at 1454 E. Bridge Street for service, and that his office had never been served with the rule date. He also filed a motion to compel the discovery deposition of Freda, which was ultimately granted.

Freda filed motions to quash the deposition, to request sanctions pursuant to La.Code Civ.P. art. 863, and to oppose the rule to reset the hearing on the descriptive list, asserting that her rule to show cause on her descriptive list was faxed to and received by Paul's attorney on March 31, 2011. She attached a copy of the fax confirmation page, which supports the assertion, but the date was April 25, 2011. She also attached a cover-letter of that date to the clerk of court showing the filing of Freda's descriptive list. Freda further attached proof of payment to the sheriff's office for physical service of the May 31, 2011 rule date. The sheriff's return shows service at the old office address of Paul's attorney on May 5, 2011, but it also shows that Robin Constane, a secretary in his law office, signed for and accepted the service.

Paul's attorney filed a memorandum on the community property partition asserting that he paid $1,400.00 per month for six and one half years *and* paid the house note for ten years, while Freda lived in the family home. He acknowledged his new secretary's receipt of service on the rule on Freda's descriptive list while he was out of the office for surgery; he acknowledged his office's failure to calendar the hearing, and he provided documentation that he was in court on another matter on May 31, 2011, at the time of the actual hearing on Freda's descriptive list. Freda filed a reply memorandum which included a request

4

to have a written judgment, memorializing the oral judgment accepting her descriptive list, signed and executed by the trial court.

On July 11, 2011, the trial court heard arguments on Paul's motion to reset, and on Freda's motions to quash, execute judgment, and request sanctions. Support staff members of both attorney's law offices testified regarding whether service was effected on Paul's attorney for the May 31, 2011 rule to show cause on Freda's descriptive list. No testimony was introduced regarding the merits of partition or the content of the two disparate descriptive lists. At the end of the hearing, the trial court found that service had been properly effected on Paul through his attorney, pursuant to La.Civ.Code art. 1235(B), that the attorney failed to appear and failed to timely file a descriptive list.

The trial court stated that he reacknowledged his oral order making Freda's detailed descriptive list the one to be used by the trial court in any partition proceeding. He then signed the judgment that Freda had prepared six weeks earlier, after the hearing on May 31, 2011, which purported to memorialize his oral ruling on that date.[3] This is shown in the record as the judgment under appeal. However, the trial court then signed another judgment denying Paul's motion to reset the hearing on the descriptive list and granting Freda's request for execution of the first judgment. Paul attaches both judgments, and since they are both the result of the July 11, 2011 hearing and are incorporated with each other by reference, we will consider them together.

---

[3]The first judgment was filed by Freda on June 7, 2011, following the hearing that Paul missed on May 31, 2011. It contained a typographical error on the first line wherein it states that the matter was heard on March 31, instead of the correct date of May 31. The trial judge did not sign this judgment until the end of the hearing on July 11, 2011, on Paul's motion to reset the rule. He did not make note of the typographical error.

5

### III.

### STANDARD OF REVIEW

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

### IV.

### LAW AND DISCUSSION

Paul Lacombe assigns twelve errors on appeal and cites no jurisprudence in support of his arguments. Some of his arguments are premature since no partition proceeding has been held and since he has been granted the right to take Freda's deposition. Some of the issues argued by Paul have been determined by stipulation between the parties, or they were previously ruled upon and not appealed. We find and will address three central issues: (1) the peremption of Freda's claims for spousal support; (2) the trial court's judicial acceptance of Freda's sworn detailed descriptive list; and, (3) the handling of the parties' reimbursement claims.

Paul asserts that the trial court was wrong in ordering him to pay spousal support more than eight years after the divorce and without having been ordered to pay spousal support or voluntarily paying spousal support.

As a threshold matter, Paul asserts that, as a result of the trial court's judgment accepting Freda's descriptive list, Paul will have to pay again bills that he has already paid between 2001 and 2008. He argues that the entire $1,400.00 per month that he sent Freda was to go toward community debts. This is not correct. The agreement between Paul and Freda indicates that the funds were for debts *and* living expenses. Moreover, in an earlier hearing, the trial judge did not find a meeting of the minds within the agreement, and both parties entered into

6

written stipulations, one of which stated that Freda did not misappropriate funds because there was never an order commanding her to pay community debts with the funds paid to her by Paul.

"A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Stipulations between the parties in a specific case are binding on the trial court when not in derogation of law. Such agreements are the law of the case." *Becht v. Morgan Bldg. & Spas, Inc.*, 02-2047, p. 5 (La. 4/23/03), 843 So.2d 1109, 1112, *cert. denied*, *Morgan Bldg. & Spas, Inc. v. Becht*, 540 U.S. 878, 124 S.Ct. 289 (2003) (quoting *R.J. D'Hemecourt Petroleum, Inc. v. McNamara*, 444 So.2d 600, 601 (La.1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92 (1984)). Accordingly, if the $1,400.00 payments were not court-ordered, they were voluntary.

Consequently, Paul's arguments must fail regarding the peremption of Freda's claim for spousal support under La.Civ.Code art. 117(3).[4] While Paul argues that Freda waited eight years to petition for spousal support, this simply is not true. She asked for spousal support in her initial petition for divorce in April 2001, even though the parties had agreed, without court order, that Paul would send monthly payments of $1,400.00. When Paul stopped the voluntary payments in November 2008, Freda filed a rule for final support in September 2009. Hence,

---

[4] The right to claim after divorce the obligation of spousal support is subject to a peremption of three years. Peremption begins to run from the latest of the following events:

(1) The day the judgment of divorce is signed.

(2) The day a judgment terminating a previous judgment of spousal support is signed, if the previous judgment was signed in an action commenced either before the signing of the judgment of divorce or within three years thereafter.

(3) The day of the last payment made, when the spousal support obligation is initially performed by voluntary payment within the periods described in Paragraph (1) or (2) and no more than three years has elapsed between payments.

La.Civ.Code art. 117.

she was well within the three-year period required by Article 117(3) when she filed for final support ten months after the last voluntary payment was made.

In fact, the stipulations attached to the December 29, 2010 judgment admit that the January 11, 2010 oral judgment had already adjudicated that the $1,400.00 payments were voluntary and that peremption did not apply. Accordingly, the stipulations attached to the judgment and referenced in the judgment by the trial court constitute a written judgment. *See McIntyre v. Becker*, 05-0257 (La.App. 4 Cir. 8/3/05), 918 So.2d 40.

Paul Lacombe states in his brief that "good cause was shown when the court refused to allow Paul Lacombe to file a Sworn Descriptive List when both parties failed to file within 45 days and both were over two years late in filing." Citing no jurisprudence, Paul argues that, under La.R.S. 9:2801, both descriptive lists were filed over two years late, but that only he was punished when the court refused to accept his list setting forth different liabilities and reimbursements due. Paul further argues that he had shown good cause for missing the hearing which his attorney failed to calendar.

Louisiana Revised Statutes 9:2801 provides in pertinent part:

(A) When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse . . . may institute a proceeding, which shall be conducted in accordance with the following rules:

(1)(a) Within forty-five days of service of a motion by either party, each party shall file a sworn detailed descriptive list of all community property, the fair market value and location of each asset, and all community liabilities. For good cause shown, the court may extend the time period for filing a detailed descriptive list. If a party fails to file a sworn detailed descriptive list timely, the other party may file a rule to show cause why its sworn detailed descriptive list should not be deemed to constitute a *judicial determination of the community*

8

> *assets and liabilities. At the hearing of the rule to show cause, the court may either grant the request or, for good cause shown, extend the time period for filing a sworn detailed descriptive list. If the court grants the request, no traversal shall be allowed.*

La.R.S. 9:2801 (emphasis added).

In this case, on February 17, 2009, following Paul's first petition for a judicial partition of community property, both parties were ordered to file detailed descriptive lists within forty-five days. Neither did so. Over a year later, after various motions, hearings, and rulings on spousal support, Paul hired a new attorney and filed a second petition for partition in May 2010, which also sought offset, reimbursement, reduction of support, and a ruling on misappropriation of funds. Almost a year later, after filing various motions, exceptions, and reconventional demands, Freda filed her detailed descriptive list on April 4, 2011. Freda's list therefore was filed over two years after the court's order to do so in February 2009, as correctly argued by Paul. Paul, however, still had not filed his sworn descriptive list. On April 28, 2011, Freda filed a motion for a rule to have her list deemed a judicial determination of the community assets and liabilities, and a hearing was set for May 31, 2011. Paul did not file his list prior to the hearing, nor did his attorney appear at the hearing. At the end of the hearing, the trial court orally ruled that Freda's list was judicially accepted and would be used in determining the community assets and liabilities.

While the record does not contain a transcript of that hearing, La.R.S. 9:2801(A)(1)(a) appears to have been followed, at least orally. When a party fails to file a list timely, the other party may file a rule to show cause why her list should not be used. At the hearing on the rule to show cause, the judge can grant her request or grant the other party an extension for good cause shown. If, however, after the hearing, the court grants the request of the one seeking the rule on her list, "no traversal shall be allowed" from the other party. La.R.S.

9

9:2801(A)(1)(a). That is exactly what happened in this case. The consequences to Paul are not a result of filing his list over two years after the order to do so in 2009. His failure is in not filing a list until after Freda availed herself of La.R.S. 9:2801(A)(1), and, until after the hearing had occurred and was ruled upon and his right to traversal was foreclosed. Moreover, when Paul finally filed his list on June 6, a week after the missed hearing on May 31, the court had already accepted Freda's list and was not required to grant Paul a new hearing. This is supported by the jurisprudence.

Pursuant to *Fontana v. Landry*, 09-322 (La.App. 3 Cir. 10/7/09), 20 So.3d 578, the trial court was required to hold an evidentiary hearing on whether Paul had received service and notice of the rule to show cause, which was done in this case. However, the court was not required to grant a new trial on the list as it pertained to assets and liabilities. In fact, in *Charles v. Charles*, 05-129 (La.App. 1 Cir. 2/10/06), 923 So.2d 786, the first circuit found that it was legal error to address traversal of the assets and liabilities listed in the wife's sworn descriptive list since those had already been deemed a judicial determination of the community of assets and liabilities. With regard to Paul's arguments that he should not be punished for his attorney's failure to appear, "Louisiana jurisprudence . . . does not consider delay or error in the attorney's performance of his duty, even if inadvertent, as grounds for granting a new trial." *Gauthier v. Gauthier*, 04-198, pp. 12-13 (La.App. 3 Cir. 11/10/04), 886 So.2d 681, 689.

In *Williams v. Williams*, 07-541 (La.App. 3 Cir. 10/31/07), 968 So.2d 1234, we discussed *Charles* and our decision in *Gauthier*, articulating as follows:

> Louisiana law provides a procedure for a former spouse to have their sworn detailed descriptive list deemed a judicial determination of the community assets and liabilities if the other spouse fails to file their own detailed descriptive list. La.R.S. 9:2801(A). . . . [T]he trial court cautioned Thomas Williams that… he would be stuck with what happened if he failed to file pleadings

within the prescribed time frame. At the close of the hearing, the trial court orally ruled that Joyce Williams's sworn detailed descriptive list was being judicially recognized as the community of assets and liabilities; it noted, however, that Thomas Williams would be able to offer some input as to how the items on the list would be divided at trial on the merits.

*Williams*, 968 So.2d at 1237 (footnote omitted).

The *Williams* court further stated that in *Gauthier*, 886 So.2d at 688, a panel of the court had held that, "[O]nce the court had adopted [the wife's] list as the judicial determination of the community property, [the husband] could not traverse that list. La.R.S. 9:2801. The court then referenced *Charles*, 923 So.2d at 788, where the first circuit stated:

Because the trial court had deemed at the [] hearing that [the wife's] sworn detailed descriptive list constituted a judicial determination of the community assets and liabilities, at the trial on the merits, the only issues before the trial court were the valuation of the [] truck and the patio cover, the distribution of these assets, the distribution of the [bank] loans, any resulting equalizing payment that may have been due subsequent to the partition, see La. R.S. 9:2801 A(4), and [the wife's] claim for reimbursement.

*Williams*, 968 So.2d at 1238 (footnote omitted).

In *Williams*, we explained that, "[d]espite the fact that the trial court had previously deemed the detailed descriptive list filed by Joyce Williams a judicial determination of the community, Thomas Williams was free to challenge the reimbursement claim of his former wife at the [subsequent] partition trial." *Id.*

Here, we note from the record that the partition trial has not taken place, and the trial court has previously entered a ruling that Paul would be allowed to depose Freda. Therefore, ostensibly, Paul is being permitted to gather evidence to challenge Freda's reimbursement claims at the trial on the merits of the partition of community property, in keeping with the above jurisprudence. However, that is

11

not what the judgment under appeal provides, and to that extent we must reverse a portion of the language in the judgment.

More specifically, the judgment, prepared by Freda following the May 31, 2011 hearing and signed by the trial court on July 11, 2011, stated as follows:

> IT IS ORDERED, ADJUDGED AND DECREED
> that the Detailed Descriptive List of Freda J. Graves Lacombe in its entirety, including the reimbursement claims contained in the List, are accepted as true and are deemed to constitute a judicial determination of the community assets and liabilities.

Based upon the foregoing jurisprudence and La.R.S. 9:2801, a party can obtain a rule to have its descriptive list accepted as a judicial determination of the community's *assets and liabilities*, pursuant to (A)(1), but the parties remaining claims and the *allocation* of the assets and liabilities are partitioned in accordance with La.R.S. 9:2801(A)(4) and its subparts (a) through (f). Accordingly, the judgment prepared by Freda, and signed by the court over a month later, should not have included language ordering that Freda's list be accepted in its "entirety, including the reimbursement claims contained in the List."

Because the trial court granted Paul the right to depose Freda, and because the court referenced future partition proceedings, we believe that the trial court inadvertently accepted the language in the judgment, including the misstatement of the hearing date. This is true because a pure acceptance of Freda's *entire* list, including her reimbursement claims, would essentially negate the need for further proceedings, evidence, or depositions. We, therefore, affirm the trial court's acceptance of Freda's descriptive list as it pertains to the assets and liabilities of the community, and we reverse the portion of the first judgment, signed on July 11, 2011, to the extent that the judgment indicates a blanket acceptance of her claims on reimbursement. In this case, the parties'

reimbursement claims should be addressed at the partition proceedings on the merits.

With regard to the second judgment resulting from the July 11, 2011 hearing, signed on July 19, 2011, in the interest of judicial economy, we affirm that judgment. As explained above, the trial court did not err in denying Paul's request to reset the hearing and allow him to traverse Freda's list as it pertains to the assets and liabilities owned by the former community. Likewise, the award of attorney fees in the second judgment is statutorily allowed under La.R.S. 9:2801(C).

V.

## CONCLUSION

Based upon the foregoing, we reverse in part, and affirm in part the first judgment of July 11, 2011. We affirm the second judgment signed on July 19, 2011, as a result of the hearing on July 11, 2011. Costs are assessed to Paul Wilray Lacombe.

**REVERSED IN PART; AFFIRMED IN PART**.