YACHET MCLAUREN

VERSUS

CARMIKO DIXON MCLAUREN

NO. 24-CA-553

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 799-202, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING

October 06, 2025

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and Stephen J. Windhorst

**AFFIRMED IN PART; VACATED IN PART;**
**REMANDED FOR FURTHER PROCEEDINGS**
    **SJW**
    **SMC**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
CARMIKO DIXON MCLAUREN
    Hollis Shepherd

**WINDHORST, J.**

Appellant/defendant, Carmiko Dixon McLauren, seeks review of the trial court's August 15, 2024 judgment,[1] in which the trial court denied her objection to the hearing officer's recommendation regarding partition of community property and made the hearing officer's recommendations the judgment of the court. The hearing officer's recommendations adopted by the August 15, 2024 judgment were: (1) appellee/plaintiff, Yachet McLauren, is granted full ownership of the property located 2608 Oklahoma Dr., Marrero, effective July 19, 2024; (2) Yachet is awarded $5,500.00 in rental reimbursement to be paid by July 19, 2024; and (3) awarded each party full ownership of all movables in their possession. For the reasons stated herein, the trial court's judgment is affirmed in part as to its denial of any claim concerning alleged liabilities of the community. In all other respects, the judgment is vacated and the matter is remanded to the trial court for further proceedings pursuant to the mandates of La. R.S. 9:2801 A(4).

**PROCEDURAL HISTORY**

The parties were married on December 8, 2008, and one minor child was born to the couple prior to the marriage. On September 9, 2019, Yachet filed a petition for divorce pursuant to La. C.C. art. 103(1). In the petition, he alleged that the former matrimonial domicile located at 2608 Oklahoma Dr., in Marrero, is his separate property that was purchased with his separate funds (herein referred to as "the family home"). He also contended that the parties did not have any community property but reserved the right to seek partition of "any other unknown acquired community property at any time in the future." On December 10, 2019, the commissioner signed a judgment of divorce in favor of Yachet and against Carmiko.

---

[1] On January 3, 2025, the trial court submitted an amended judgment pursuant to this court's order that the trial court amend the August 15, 2024 judgment as required by La. C.C.P, art. 1918 to include the appropriate decretal language.

On February 12, 2020, Yachet filed a sworn detailed descriptive list attesting to the community property existing between the parties as of the dissolution of the marriage. The sworn detailed descriptive list filed by Yachet is the following:

**PERTINENT DATES:**

DATE OF THE MARRIAGE:        DECEMBER 18, 2008

COMMUNITY TERMINATION DATE:    SEPTEMBER 9, 2019

DATE OF DIVORCE:            DECEMBER 10, 2019

**I. ASSETS**

| A. | IMMOVABLE PROPERTY | VALUE PER YM |
|---|---|---|
| 1. | 2608 Oklahoma Drive, Marrero, Louisiana 70072 | SEPARATE PROPERTY OF YM |
| B. | MOVABLE PROPERTY | |
| | Community Assets in the Possession of CARMIKO DIXON MCLAUREN | |
| 2. | Vehicle | $ TBD |
| 3. | 2608 Oklahoma Drive Furnishings | $ 600.00 |
| 4. | Bank Account | $ TBD |
| | TOTAL ASSETS IN POSSESSION OF CARMIKO DIXON MCLAUREN | $ 600.00 |

| | Assets in the Possession of YACHET MCLAUREN | |
|---|---|---|
| 14. | Regions Bank Account Ending 3047 (September 2019) | $ 187.00 |
| 15. | Regions Savings Account Ending 0844 (September 2019) | $ 30.00 |
| 16. | New York Life Policy Account Ending 8065 (beneficiary Jamichael Dixon) | $ TBD |
| | TOTAL ASSETS IN POSSESSION OF YACHET MCLAUREN | $ 207.00 |

**II. LIABILITIES**

| 18. | Capital One Credit Acct Ending in 2096 (September 2019 – YM) | $ 282.08 |
|---|---|---|
| 19. | Nissan Altima Lease Payments ($299.49 X 28 - YM) | $ 8,385.72 |
| | TOTAL LIABILITIES OF COMMUNITY | $ 8,667.80 |

**III. REIMBURSEMENT CLAIMS DUE YACHET MCLAUREN**

| | DESCRIPTION | |
|---|---|---|
| 23. | Rental Reimbursement for CDM's exclusive use of Oklahoma Ave home ($1100.00 X 5; September 2019 – January 2020) | $ 5,500.00 |
| | TOTAL REIMBURSEMENT CLAIMS DUE YM | $ 5,500.00 |

Yachet McClauren reserves the right to supplement and/or amend this Detail Descriptive List prior to any formal traversal or trial.

**RECAPITULATION**

| | |
|---|---|
| NET ASSETS IN THE POSSESSION OF YM | $207.00 |
| NET ASSETS IN THE POSSESSION OF CDM | $600.00 |
| NET COMMUNITY ASSETS | $807.00 |
| | |
| TOTAL LIABILITIES OF IN THE POSSESSION OF YM | ($8,667.80) |
| | |
| ½ COMMUNITY DEBT OWED TO YM BY CDM | $4,333.90 |
| ½ NET COMMUNITY DUE TO YM | $403.50 |
| LESS ASSETS IN POSSESSION OF YM | ($207.00) |
| EQUALIZING PAYMENT DUE TO YM | $4,530.40 |
| ADD REIMBURSEMENT CLAIMS DUE YM | $5,500.00 |
| | |
| EQUALIZING PAYMENT DUE FROM CDM | $10,030.40 |

On July 31, 2020, Yachet filed a motion to partition community property, contending the parties were subject to a community property regime during their

marriage and they had not partitioned the community property. Pursuant to La. R.S. 9:2801 A(1)(a), Yachet requested that the trial court order the parties to each file a sworn detailed descriptive list of all community property. The commissioner ordered the parties to comply with La. R.S. 9:2801, and submit a sworn detailed descriptive list "of all community property, the fair market value of the property, the location of each asset and any and all community liabilities and their traversals."

On November 4, 2020, Yachet filed a pleading requesting that a qualified appraiser be appointed to appraise the current value of the family home. On December 16, 2020, the parties appeared before the hearing officer and stipulated to the appointment of "Jason Carmouche Appraisal Service."

On June 21, 2022, Yachet filed a motion to adopt his sworn detailed descriptive list, filed on February 12, 2020, as the official list of the community's assets and liabilities and to set the community property partition for trial. Both parties received notice of the hearing date on Yachet's motion to adopt. On March 28, 2023, Yachet appeared for the hearing, but Carmiko did not appear. Despite the obvious deficiencies with Yachet's sworn detailed descriptive list,[2] the hearing officer recommended that, pursuant to La. R.S. 9:2801 A(1)(a), Yachet's sworn detailed descriptive list be deemed the judicial determination of the community assets and liabilities. Carmiko did not file an objection.[3] On June 27, 2023, the trial court signed a purported final judgment submitted by Yachet's counsel, which ordered that Yachet's sworn detailed descriptive list is deemed to constitute a judicial determination of the community's assets and liabilities, pursuant to La. R.S. 9:2801 A(1)(a).[4]

---

[2] Yachet's sworn detailed descriptive list does not comply with La. R.S. 9:2801 A, as ordered by the commissioner, in that the list does not provide a complete description of or the fair market value for all of the alleged assets of the community.

[3] Pursuant to La. R.S. 46:236.5 C(7), if a party does not file a timely written objection to the hearing officer's recommendations, "the order *shall* become a final judgment of the court and *shall* be signed by a judge and appealable as a final judgment." [Emphasis added.]

[4] The June 27, 2023 judgment does not contain the appropriate decretal language required to constitute a valid, final judgment. Namely, the judgment does not state that (1) Yachet's motion to adopt his sworn detailed descriptive list was granted; (2) the judgment was granted in favor of Yachet and against Carmiko;

Subsequently, on July 20, 2023, Yachet filed a motion to set the community property partition for trial and the trial was set for August 17, 2023. After numerous continuances due to Carmiko not being served, the partition trial was ultimately reset for April 16, 2024. Both parties received notice of the trial date. On April 16, 2024, the parties appeared before the hearing officer for a conference on the partition. Instead of proceeding with the partition conference, the parties stipulated to the appointment of an appraiser, Chris Jourdan, with Jourdan Appraisal Services, LLC, the second person appointed to appraise the family home.[5] It was further stipulated that a copy of the appraisal report would be sent to the hearing officer and to both parties.[6] The hearing officer conference on partition was reset for June 6, 2024, and Carmiko was served with notice of the date during the hearing officer conference.

On June 6, 2024, Yachet and his counsel were present for the partition conference; Carmiko, who was not represented by counsel, did not appear. The hearing officer recommended the following regarding the partition of the community property: (1) Yachet be granted full ownership of the immovable property located at 2608 Oklahoma Drive in Marrero, effective July 19, 2024; (2) Yachet be awarded $5,500.00 in rental reimbursement, to be paid by July 19, 2024, and (3) each party be awarded full ownership of the movables in their possession. The hearing officer did not make any recommendations regarding the alleged liabilities of the community. On June 10, 2024, Carmiko filed a timely objection, stating she was "thirty minutes late" for the partition conference with the hearing officer due to the weather. She requested a "new trial" because the recommendation was "not fair."

---

and more importantly, (3) the specific relief granted is *not* determinable from the judgment without reference to an extrinsic source (*i.e.*, the final judgment only states it is ordered that pursuant to La. R.S. 9:2801 A(1)(a), Yachet's sworn detailed descriptive list is deemed to constitute a judicial determination of the community assets and liabilities). La. C.C.P. art. 1918; Input/Output Marine Sys., Inc. v. Wilson Greatbatch Techs., Inc., 10-477 (La. App. 5 Cir. 10/29/10), 52 So.3d 909, 915; Morraz-Blandon v. Voiron, 16-112 (La. App. 5 Cir. 08/25/16), 199 So.3d 1220, 1221; Claiborne Medical Corp. v. Siddiqui, 12-759 (La. App. 5 Cir. 02/28/13), 113 So.3d 1109, 1112; Babin v. State Farm Mutual Auto. Ins. Co., 11-192 (La. App. 5 Cir. 09/27/11), 76 So.3d 100, 102.

[5] It is unclear why a different appraiser was appointed to appraise the family home a second time, which was previously deemed Yachet's separate property in the sworn detailed descriptive list. It is also unclear why this was done on the day of the partition trial, instead of proceeding with the trial, especially considering the problems Yachet stated he had setting the partition for hearing and in serving Carmiko.

[6] There is no indication in the record that an appraisal report was provided.

Carmiko's objection was set before the trial court on July 25, 2024. At the beginning of the hearing, the trial judge addressed Carmiko, stating:

> Okay. So, apparently, the hearing officer made a recommendation as a result of that that becomes an interim judgment. You took an objection to that hearing officer recommendation. Are you prepared today to present any evidence or anything along those lines as to why that recommendation is incorrect, or do you actually have an opposition to that recommendation?

Carmiko informed the trial court she was late to the hearing due to the weather, she did not want to lose her house and she was told that "everything worked in [Yachet's] favor," and then she filed the objection form given to her by the hearing officer.

The trial judge asked counsel for Yachet to "bring [him] up to speed[.]" Yachet's counsel explained the procedural history of the case. He stated that Yachet previously filed a motion to adopt his sworn detailed descriptive list as the official sworn detailed descriptive list of the community's assets and liabilities, to which Carmiko did not oppose, traverse, or file her own list. Yachet's counsel said that Carmiko did not appear at that hearing officer conference, and thus, the hearing officer recommended that Yachet's sworn detailed descriptive list be deemed to constitute a judicial determination of the community's assets and liabilities. Carmiko did not file an objection and the trial court signed a judgment making the hearing officer's recommendation the judgment of the court. Counsel for Yachet pointed out that the judicially accepted sworn detailed descriptive list indicated that the family home is Yachet's separate property. Yachet's counsel stated that the parties then appeared before the hearing officer for the partition conference, and it was determined that an appraisal for the family home was needed for the partition trial. He stated that the appraisal was performed, everyone was served with the next trial date and the appraisal was received. Yachet's counsel stated he and his client appeared for the community property partition conference, but Carmiko did not show up. He explained that the hearing officer did not immediately start the hearing, to give Carmiko an opportunity to appear. Thereafter, when Carmiko failed to

appear, the hearing officer recommended granting Yachet full ownership of the family home. Yachet's counsel reiterated that Yachet has always alleged that the family home was his separate property because he bought with money from an insurance settlement. He asserted that Carmiko has not shown "why [the family home] should be hers and why it's not his separate property."

The trial court then addressed Carmiko, stating:

> Okay. So you understand how [hearing officer conferences] work, you sit in a room with [the hearing officer] and the other side, and you kind of exchange some documents, and you have some conversations and that sort of thing. When you get to this level, when you come up to the courtroom, that's not how it works anymore. At this point, the rules of Civil Procedure apply, the Civil Code applies, as it does downstairs as well, but there are certain evidentiary rules that apply up here that aren't' present down there. So you have to know how to present evidence, you have to properly introduce evidence, you have to properly introduce evidence, you have to make a record, as it's called.
>
> Are you prepared to do that? I mean, do you have any evidence to present today?

Carmiko responded, "No, not right now. No." The trial court asked Carmiko if she had any evidence that the family home was not Yachet's separate property. Carmiko replied that the family home was "purchased together with me and him" and Yachet gave the family home to her. The trial court asked her if Yachet executed an act of donation in her favor and she said "no," she only had some text messages, which she did not have with her. The trial court responded:

> So again, this is a situation where you'd come up here and you'd start presenting evidence to show why you're entitled to half the house, or whatever percentage of the house you think you're entitled to. If you don't have any evidence, you can testify, but it would just be your word against his, I guess, at that point. If you want to testify, that's fine. But if you don't have any other physical documents or physical evidence to present, then I'd just listen to your testimony and make a decision based upon that.

The trial court then asked counsel for Yachet *when* the family home was acquired. After some discussion, counsel for Yachet acknowledged that the house "*was purchased during the community*" and that Carmiko has always maintained it was community.

The trial court asked Carmiko if she had any evidence to present and then asked to see the hearing officer's recommendation.[7] The trial court then advised Carmiko that the objection hearing was set for "[t]oday," she was served with notice of the date, and informed her that if she wanted to present evidence or testify on her own behalf, this was her opportunity to do so. Carmiko elected not to testify, stating "I said what I have to say. He knew how he gave me that house. He told me if I don't file for spouse [*sic*] support or child support, he would let me keep the house, and he know that."

Thereafter, the trial court stated:

> Okay. I don't have anything in the record at this point, then. If that's all you want to say, I don't have anything in the record at this point before me that would indicate that there is a valid basis for the objection or that the objection should be sustained based on the record before me. So I'm going to deny the objection at this time, so the interim judgment will become the judgment of the Court as well.

This appeal followed.

**LEGAL ANALYSIS**

On appeal, Carmiko contends that the trial court erred by awarding Yachet full ownership of the immovable property located at 2608 Oklahoma Dr. (*i.e.*, the family home) and awarding him rental reimbursement in the amount of $5,500.00 because at the time of the hearing, the fair market value of all of the community assets had not been fully determined. Additionally, Carmiko contends that the trial court's failure to determine the value of all of the community movables resulted in an inequitable distribution of community assets to Carmiko.

Where a party timely objects to the hearing officer's recommendations, those recommendations do not become a final judgment, and the objecting party is clearly entitled to a *de novo* review of the hearing officer's findings by the trial court. Fairbanks v. Beninate, 20-206 (La. App. 5 Cir. 12/23/20), 308 So.3d 1222, 1233-

---

[7] There is no indication in the record that the trial court reviewed or considered the judicially accepted sworn detailed descriptive list.

1234, writ denied, 21-250 (La. 03/23/21), 313 So.3d 272; Dugué v. Dugué, 17-525 (La. App. 5 Cir. 06/27/18), 250 So.3d 1174, 1178; See also La. R.S. 46:236.5 C(6).**[8]**

Here, Carmiko timely filed an objection.

Because Carmiko timely objected, the hearing officer's recommendations did not become a final judgment and Carmiko was entitled to a *de novo* hearing. La. R.S. 46:236.5; Fairbanks, 308 So.3d at 1233-1234; Dugué, 250 So.3d at 1178.

In Fairbanks, this court held:

> The *de novo* hearing is of record, and rules of evidence apply. The parties may present evidence, sworn testimony, and argument before the trial judge, as in any other trial or contradictory evidentiary hearing.
>
> The trial court must hear the evidence and review the hearing officer's recommendations *de novo*, and it "shall accept, reject, or modify in whole or in part the findings of the hearing officer." Dugué, 250 So.3d at 1178. Significantly, the burden of proof does not shift to the objecting spouse. In keeping with the intent of a *de novo* hearing, the burden of proof remains on the moving spouse who originally had the burden of proof. If after *de novo* consideration of the evidence presented, the trial court makes the same findings of fact and law as did the hearing officer, the court may adopt the hearing officer's recommendations in whole or in part. If it does not agree, the trial court may adopt part or none of the hearing officer's recommendations, and may fashion its own remedies and judgment. Thus, the trial court may rule as it deems appropriate on the remaining issues based on the relevant evidence admitted at the *de novo* hearing.

Fairbanks, 308 So.3d at 1234.

The community property regime is terminated by a judgment of divorce. La. C.C. art. 2356. A judgment of divorce terminates the community property regime retroactively to the date of filing of the petition in the action in which the judgment of divorce is rendered. La. C.C. art. 159.

La. R.S. 9:2801 provides the procedure for judicial partitions of community property and settlement of claims after dissolution of the marriage. La. R.S. 9:2801 provides, in pertinent part:

---

**[8]** See also Ariatti v. Plaisance, 18-84 (La. App 5 Cir. 09/13/18), 255 So.3d 1239, 1249 and Garcia v. Hernandez, 21-338 (La. App. 5 Cir. 04/11/22), 339 So.3d 61 (wherein this court recognized a party's right to a *de novo* hearing before the trial court upon a timely objection to the domestic commissioner's interim judgment).

A. When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules:

(1)(a) Within forty-five days of service of a motion by either party, each party shall file a sworn detailed descriptive list of all community property, the fair market value and location of each asset, and all community liabilities. For good cause shown, the court may extend the time period for filing a detailed descriptive list. *If a party fails to file a sworn detailed descriptive list timely, the other party may file a rule to show cause why its sworn detailed descriptive list should not be deemed to constitute a judicial determination of the community assets and liabilities.* At the hearing of the rule to show cause, the court may either grant the request or, for good cause shown, extend the time period for filing a sworn detailed descriptive list. *If the court grants the request, no traversal shall be allowed.* [Emphasis added.]

\* \* \*

(2) Within sixty days of the date of service of the last filed detailed descriptive list, each party shall either traverse or concur in the inclusion or exclusion of each asset and liability and the valuations contained in the detailed descriptive list of the other party. For good cause shown, the court may extend the time period for a party to traverse or concur in the detailed descriptive list of the other party. The trial of the traverses may be by summary procedure. **At the trial of the traverses**, *the court shall determine the community assets and liabilities; the valuation of assets shall be determined* **at the trial on the merits**. The court, in its discretion, may by ordinary procedure try and determine at one hearing all issues, including those raised in the traverses.

\* \* \*

(4) The court **shall** then partition the community in accordance with the following rules:

(a) The court **shall** *value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.*

(b) The court **shall** divide the community assets and liabilities so that each spouse receives property of an *equal* net value.

(c) The court **shall** allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court **shall** consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.

(d) *In the event that the allocation of assets and liabilities results in an unequal net distribution*, the court **shall** order the payment of an

*equalizing sum of money*, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security. [Emphasis added.]

Thus, La. R.S. 9:2801 A(1)(a) provides a procedure for a former spouse to have their sworn detailed descriptive list deemed a judicial determination of the community assets and liabilities if the other spouse fails to file their own sworn detailed descriptive list. Once the trial court adopts a spouse's sworn detailed descriptive list as the judicial determination of the community assets and liabilities, the other spouse's right to traverse the list or to contest the classification of property is foreclosed. See Lacombe v. Lacombe, 11-1178 (La. App. 3 Cir. 02/01/12), 85 So.3d 721, 727-728; Brown v. Brown, 16-31 (La. App. 3 Cir. 12/21/16), 210 So.3d 297, 299-300.

Nevertheless, although a spouse can obtain a judgment to have their descriptive list accepted as a determination of what items constitute the community's assets and liabilities pursuant to La. R.S. 9:2801 A(1)(a), the parties' remaining claims, including claims for reimbursement, valuation of the assets and liabilities, and the allocation of the assets and liabilities, are to be partitioned pursuant to the mandates set forth in La. R.S. 9:2801 A(4)(a) through (f). See Lacombe, 85 So.3d at 729 (wherein the court explained that the acceptance of a spouse's "entire list, including [the spouse's] reimbursement claim, would essentially negate the need for further proceedings, evidence, or depositions"); Williams v. Williams, 07-541 (La. App. 3 Cir. 10/31/07), 968 So.2d 1234, 1238 (wherein the court stated "[d]espite the fact that the trial court had previously deemed the detailed descriptive list filed by [the ex-wife] a judicial determination of the community, [the ex-husband] was free to challenge the reimbursement claim of his former wife at the [subsequent] partition trial."); Brown, 210 So.3d at 299 (because the ex-husband's detailed descriptive list was judicially accepted, the court held that the only remaining issues before the trial

court at the partition trial were valuation, distribution of the assets, equalizing payments and reimbursement claims). This is further supported by the statute's structured procedure, which clearly contemplates two possible trials in a community property partition.

Specifically, La. R.S. 9:2801 A(2) mentions a "trial of the traverses," wherein the trial court *shall determine the assets and liabilities* of the community, and that the *valuation* of the community assets shall be determined "at the trial on the merits." Thus, the statute foresees two possible trials: the first trial being the preliminary traversal trial and the second later trial being the trial on the merits, at which time the assets will be valued and allocated, and an accounting rendered. La. R.S. 9:2801; See Williams v. Williams, 06-249 (La. App. 1 Cir. 09/14/07), 970 So.2d 633, 638; Queenan v. Queenan, 492 So.2d 902, 914 (La. App. 3 Cir. 1986), writ denied, 496 So.2d 1045 (La. 1986). In mandating this procedure, it is clear that the legislature intended for the assets to be valued at the trial on the merits. Williams, 970 So.2d at 638. The purpose behind valuing the assets at the time of trial is to ensure that each party is given an equal value of assets, taking into consideration assets that may appreciate or depreciate prior to the final distribution of the community's assets and liabilities. Id.

Consequently, under the statutory language of La. R.S. 9:2801 A(2), although the trial court is statutorily authorized to determine the assets and liabilities of the parties at the trial of the traverses, including judicially accepting one party's sworn detailed descriptive list when the other party fails to file a list, the trial court does not have any statutory authority to *value* those assets and liabilities at that time. Instead, the clear and unambiguous statutory language mandates that the trial court value the assets and liabilities at the time of the trial on the merits. La. R.S. 9:2801 A(2); Williams 970 So. 2d at 638-639.

A trial court has broad discretion in adjudicating issues raised by partition of the community regime and is afforded great latitude in arriving at an equitable distribution of assets between spouses. Man Ching Ho v. Nee, 19-78 (La. App. 5 Cir. 11/13/19), 284 So.3d 665, 669; Vedros v. Vedros, 16-735 (La. App. 5 Cir. 10/25/17), 229 So.3d 677, 680, writ denied, 17-2119 (La. 02/23/18), 237 So.3d 1185, and writ denied, 18-004 (La. 02/23/18), 237 So.3d 520. The allocation or assignment of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard. Vinet v. Vinet, 20-387 (La. App. 5 Cir. 04/14/21), 347 So.3d 972, 976. In a community partition proceeding, the burden of proof is on the party claiming reimbursement. McLaughlin v. McLaughlin, 17-645 (La. App. 5 Cir. 05/16/18), 247 So.3d 1105, 1115. Whether a reimbursement claim is allowed is a finding of fact reviewable under the manifest error standard. Vinet, 347 So.3d at 976.

It is incumbent upon the parties to present evidence at the partition trial regarding the *value* of the assets *at the time of trial*. Man Ching Ho, 284 So.3d at 669. [Emphasis added.] The trial court is not required to accept at face value a party's valuation of assets, debts or claims against the community. Ponson v. Ponson, 17-469 (La. App. 5 Cir. 03/14/18), 241 So.3d 1213, 1220 fn. 7; Ellington v. Ellington, 36,943 (La. App. 2 Cir. 03/18/03), 842 So.2d 1160, 1166, writ denied, 03-1092 (La. 06/27/03), 847 So.2d 1269. When the parties do not submit evidence of the current value of community assets, the trial court does not err in making its valuations based upon other evidence presented by the parties. McLaughlin, 247 So.3d at 1113; Gill v. Gill, 39,406 (La. App. 2 Cir. 03/09/05), 895 So.2d 807, 812. However, the trial court's valuation must be reasonably supported by evidence in the record. McLaughlin, 247 So.3d at 1113; Ellington, 842 So.2d at 1166. The purpose of a partition under La. R.S. 9:2801 is for the trial court to make an immediate and final apportionment of the assets and liabilities. Man Ching Ho, 284 So.3d at 669.

***Judicial Determination of the Community's Assets and Liabilities***

In the instant case, Yachet availed himself of the procedure set forth in La. R.S. 9:2801 A(1)(a), and his sworn detailed descriptive list was deemed to constitute the judicial determination of the community assets and liabilities. As a result, Carmiko forfeited her right to traverse Yachet's sworn detailed descriptive list as to *items* alleged to constitute the community's assets and liabilities, and forfeited her right to contest the classification of the property as listed.

At the *de novo* hearing, Carmiko only had the right to present evidence and argument concerning the items judicially accepted to be a determination of the community's assets and liabilities. Yachet was not required to present any further evidence to establish the *nature* of the property other than the judicially accepted sworn detailed descriptive list as to community assets and liabilities. The only remaining issues at the hearing before the trial court were the *valuation* of the assets and liabilities *at the time of the trial*, the distribution or allocation of the assets and liabilities so that each party received property of an equal net value, the determination of whether an equalizing payment was required, and the adjudication of Yachet's reimbursement claim. It was incumbent upon Carmiko and Yachet to present evidence of the value of the community's assets at the *de novo* hearing.

***De Novo Hearing on Carmiko's objection***

*Community's assets (movables)*

The record shows that neither party presented any objective evidence regarding the *value* of the community's assets (*i.e.*, the movables). Carmiko did not testify or present any evidence and Yachet relied only on the judicially accepted sworn detailed descriptive list of the community's assets, which on its face was deficient. Because Carmiko did not present any evidence, the trial court made the interim judgment (*i.e.*, the hearing officer's recommendation) the judgment of the court. Specifically, as to the community's assets, the trial court awarded each party

full ownership of the movables in their possession. After careful examination of the record, we find the trial court abused its discretion because it did not follow the mandates of La. R.S. 9:2801 A(4).

Considering the plain language of the statute, and given that La. R.S. 9:2801 does not contemplate or authorize the trial to accept the *values* listed for the assets and liabilities at the time the list was judicially deemed to constitute the assets and liabilities of the community, the parties were obligated to present evidence regarding the value of the assets *and* the trial court was mandated to *value* the assets at the time of the trial on the merits, which the trial court clearly did not do. This is evident by the fact that neither party offered any objective evidence as to the *value* of the assets, the trial court made no findings of fact and did not assess any values to the assets, and the trial court denied the objection, stating "so the interim judgment will become the judgment of the [c]ourt as well." As previously stated, the purpose of valuing the assets at the time of the trial is to ensure each party is given an *equal net value* of assets, taking into consideration assets that may appreciate or depreciate prior to the final distribution of the community's assets.

Even if we assume the trial court properly considered and accepted, on its face, the values contained in the judicially accepted sworn detailed descriptive list for the community's assets, the trial court's alleged valuation and subsequent allocation of the assets is not reasonably supported by evidence in the record. For the following reasons, we find the judicially accepted sworn detailed list is deficient on its face: (1) the list does not contain an adequate description or value for all of the community's assets (*i.e.*, a "vehicle" and a "bank account" alleged to be in the possession of Carmiko are clearly not adequately described and neither have a value listed); (2) some of the assets are subject to depreciation (*i.e.*, the "vehicle"[9] and the

---

[9] Automobiles tend to depreciate in value over a period of time and the use of the vehicle is directly related to its depreciation. <u>Gachez v. Gachez</u>, 451 So.2d 608, 613 (La. App. 5 Cir. 1984), <u>writ denied</u>, 456 So.2d 166 (La. 1984).

"2608 Oklahoma Drive Furnishings"[10]); and (3) it is unclear whether the amounts listed for two of the bank accounts (funds listed as of "September 2019") accurately reflected the amounts in the accounts on the date the community was terminated or as of the date of the trial because no objective evidence was submitted—accounts are subject to fluctuation.[11] Because of the deficiencies on the face of the judicially accepted sworn detailed descriptive list, the statute's mandate requiring the trial court to assess a *value* to all of the community's assets was even more critical and necessary in this case.

The absence of a valuation for ***all*** of the community assets makes it unclear whether the trial court divided the community assets so that each spouse received property of an *equal net value*, or whether an equalizing payment was required. La. R.S. 9:2801 A(4). Since the trial court did not comply with the mandates set forth in La. R.S. 9:2801 A(4), we find the trial court abused its discretion in awarding each party full ownership of the movables in their possession as this allocation is not supported by the evidence in the record. Accordingly, this portion of the judgment is vacated and this matter is remanded to the trial court for further proceedings pursuant to the mandates of La. R.S. 9:2801 A(4).

*Community Liabilities*

As to the alleged liabilities of the community, the judgment is silent as to any claim regarding liabilities of the community and thus, it is presumed denied. When a judgment is silent as to a claim or demand that was litigated, it is presumed to be deemed denied by the trial court. Zydeco's II, LLC v. Certain Underwriters at Lloyd's, London, 19-562 (La. App. 5 Cir. 05/28/21), 356 So.3d 345, 374, writ

---

[10] Depending on the type of household furnishings (*i.e.*, if there are any antiques), the household furnishings could be subject to appreciation.

[11] Under community assets held in his possession, Yachet also listed a life insurance policy naming Jamichael Dixon as the named beneficiary. The right to proceeds of a life insurance policy is *sui generis* and is not governed by community property codal articles. Fowler v. Fowler, 03-590 (La. 12/12/03), 861 So.2d 181, 184, 186. Life insurance proceeds go to the named beneficiary and are governed by the contractual provisions of the policy. Id. Because the life insurance policy does not name either spouse as beneficiary (according to the judicially accepted list), it does not appear the policy is a community asset.

denied, 21-01745 (La. 02/08/22), 332 So.3d 640, and writ denied, 21-01755 (La. 02/08/22), 332 So.3d 665.  The parties did not appeal the trial court's denial of this claim.  As such, we affirm the trial court's denial of the claim concerning the alleged liabilities of the community.

### *Immovable property – separate property of Yachet*

Property of married persons is generally characterized as either community or separate.  La. C.C. art. 2335.  Community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.  La. C.C. art. 2338.  Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property.  La. C.C. art. 2340; Talbot v. Talbot, 03-814 (La. 12/12/03), 864 So.2d 590, 597.

La. C.C. art. 2341, in part, classifies separate property as property acquired by a spouse prior to the establishment of a community property regime, property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; and things acquired by a spouse as a voluntary partition of the community during the existence of a community property regime.

It is well-settled that the presumption that property acquired during the marriage is community property is a strong one.  Further, the spouse seeking to rebut the strong presumption of community has the burden of proving by a preponderance

of the evidence that such assets are separate, and not community. Talbot, 864 So.2d at 600; Ross v. Ross, 02-2984 (La. 10/21/03), 857 So.2d 384; Tullier v. Tullier, 464 So.2d 278, 282 (La. 1985); McCorvey v. McCorvey, 05-889 (La. App. 3 Cir. 02/01/06), 922 So.2d 694, writ denied, 06-435 (La. 04/28/06), 927 So.2d 295; In re Succession of Hebert, 03-531 (La. App. 1 Cir. 09/17/04), 887 So.2d 98, 100-101, writ denied, 04-2571 (La. 12/17/04), 888 So.2d 872.

Here, the judicially accepted sworn detailed descriptive list provided that the immovable property (*i.e.*, the family home) located at 2608 Oklahoma Drive in Marrero, was Yachet's separate property. The harsh result of Carmiko's failure to file her own sworn detailed descriptive list is that she is not able to contest Yachet's classification of the family home as his separate property. Thus, at first glance, it would appear that the trial court did not abuse its discretion in awarding Yachet full ownership of the family home as his separate property. But, due to Yachet's counsel's responses to the trial court, we find the issue as to classification of the family was not resolved simply by accepting the classification in the judicially accepted sworn detailed descriptive list.

During the hearing, in response to a direct question from the trial court as to *when* the family home was purchased, counsel for Yachet admitted that the family home was purchased *during* the community and that Carmiko has always maintained that the family home was community. Upon questions from the trial court, Carmiko, who has been unrepresented throughout the proceeding, maintained that the family home was bought for her during the community.

A judicial confession is a declaration made by a party in a judicial proceeding and it constitutes full proof against the party who made it. La. C.C.P. art. 1853. A declaration that expressly acknowledges an adverse fact and is made by a party in a judicial proceeding is a judicial confession that constitutes full proof against the party who made it. Goines v. Goines, 08-42 (La. App. 5 Cir. 06/19/08), 989 So.2d

794, 797. A judicial confession has the effect of waiving evidence as to the subject of the admission and withdrawing the subject matter of the confession from issue. Cichirillo v. Avondale Indus., Inc., 04-2894 (La. 11/29/05), 917 So.2d 424, 429, citing Cheatham v. City of New Orleans, 378 So.2d 369, 375 (La. 1979). A declaration made by a party's attorney has the same effect as one made by the party himself. La. C.C. art. 1853, Comment (b); C.T. Traina, Inc. v. Sunshine Plaza, Inc., 03-1003 (La. 12/03/03), 861 So.2d 156, 159. Responses by counsel to questions posed by the court may constitute judicial confessions, relieving the opposition of the necessity of introducing evidence. See Compensation Specialties, L.L.C. v. New England Mutual Life Ins. Co., 2008-1549 (La. App. 1 Cir. 02/13/09), 6 So.3d 275, 281, writ denied, 2009-0575 (La. 04/24/09), 7 So.3d 1200; Cichirillo, 917 So.2d at 430; Lege v. Union Carbide Corporation, 20-252 (La. App. 4 Cir. 04/01/21), 365 So.3d 617, 632; Bardwell v. Faust, 2006–1472 (La. App. 1 Cir. 05/04/07), 962 So.2d 13, 21 fn. 7, writ denied, 2007–1174 (La. 09/21/07), 964 So.2d 334.

We find that Yachet's counsel's acknowledgment that the family home was purchased during the community regime was a judicial confession of an adverse fact which raised a strong presumption that the family home was community, despite his claim in the judicially accepted sworn detailed descriptive list that the family home was separate property. This judicial confession by Yachet's own counsel that the family home was purchased during the community negated or, at a minimum, called into question the veracity of Yachet's judicially accepted sworn detailed descriptive list that deemed the family home to be Yachet's separate property. Under these circumstances, we find the trial court's determination that the family home is Yachet's separate property is not reasonably supported by the evidence in the record, and that the presumption of community has not been rebutted. Accordingly, we vacate this portion of the judgment and remand for further proceedings pursuant to La. R.S. 9:2801.

*Rental Reimbursement Claim*

Yachet listed a rental reimbursement claim against Carmiko on the judicially accepted sworn detailed descriptive list of the community's assets and liabilities. Nevertheless, because rental reimbursement is not an asset or liability of the community, but is an individual claim, Yachet, as the moving party, had the burden of proving he was entitled to rental reimbursement under La. R.S. 9:374 at the *de novo* hearing. When a timely objection has been filed, the burden of proof of the original moving party does not shift to the objecting party at the *de novo* hearing, regardless of the hearing officer's recommendation. See Fairbanks, *supra*; Dugué, *supra*. We find that the trial court erred by shifting the burden of proof to Carmiko to show why the hearing officer's recommendation was incorrect, instead of requiring that Yachet bear his original burden of proof of his rental reimbursement claim.

A review of the record shows that Yachet's counsel did not seek to admit into evidence: (1) the appraisal for the family home, which presumably contained a fair market rental value for the family home;[12] or (2) evidence that Carmiko exclusively occupied the family home, and if so, for how long. Thus, Yachet did not satisfy his burden of proof that he was entitled to rental reimbursement, and the evidence in the record does not reasonably support the trial court's award of rental reimbursement to Yachet.

Even assuming the trial court properly considered the amount listed for Yachet's rental reimbursement claim based solely on its inclusion in the judicially accepted sworn detailed descriptive list of the community's assets and liabilities, we find the evidence in the record does not reasonably support the award of rental reimbursement in the amount of $5,500 due to Yachet from Carmiko for the following reasons.

---

[12] The need for the appraisal was the stated by Yachet's counsel as the reason for the trial court's continuance of the April 2024 partition trial, which was then reset to the June 2024 trial date.

First, the plain language of the statute does not contemplate or authorize the trial court to accept the *values* contained in the judicially accepted sworn detailed descriptive list. La. R.S. 9:2801 A(2). Instead, the trial court is required to adjudicate and value the reimbursement claim *at the time of the trial on the merits*, which was not done in the instant case. La. R.S. 9:2801 A(4). Here, Yachet's sworn detailed descriptive list was originally filed in February of 2020, and the trial on the merits was not held until June of 2024, over four years later. The appraisal was not completed until immediately before the trial in June of 2024. Yachet did not provide any objective evidence establishing the fair market rental value or that Carmiko had exclusive use of the family home, and if so, for how long. Instead, Yachet relied on the values in the judicially accepted sworn detailed descriptive list, which was filed *before* the appraisal. Furthermore, the trial court did not assess a value to Yachet's rental reimbursement claim and there is no objective evidence to support the alleged fair market rental value or months Carmiko allegedly occupied the family home.

Secondly, Yachet's counsel's statement to the trial court regarding the severe deterioration of the family home, without further evidence or the appraisal report being admitted into evidence, appears to be detrimental to any claim by Yachet that he is entitled to the alleged monthly rental value of $1,100 provided in the descriptive list and a rental reimbursement amount of $5,500. Specifically, counsel for Yachet stated that "the house is falling into gross disrepair," that the condition of the house did not "come to light until we had the appraisal done," and said that there were "things that need[ed] to be repaired in the house" before Yachet could sell the house. At the hearing, Carmiko responded that she could not fix the family home because she's "battling" with Yachet. These statements by Yachet's counsel do not appear to coincide with the value of the rental reimbursement claim alleged in the sworn detailed descriptive list, and are not supported by objective evidence (appraisal

report not admitted into evidence), and the parties did not present any evidence regarding the condition of the house.

The trial court improperly shifted the burden of proof to Carmiko, requiring her to disprove Yachet's rental reimbursement claim. Yachet did not satisfy his burden of proving entitlement to rental reimbursement, and the trial court did not assess a value to Yachet's rental reimbursement claim at the time of the trial. Nor did the trial court make any findings of fact regarding rental value, or as to whether and for how long Carmiko occupied the family home after separation/divorce. Therefore, based on the insufficient evidence before the trial court at the *de novo* hearing, we find the trial court's award of rental reimbursement to Yachet in the amount of $5,500 was manifestly erroneous and is not reasonably supported by the evidence in the record. Accordingly, this portion of the judgment is vacated and the matter is remanded for further proceedings pursuant to the mandates of La. R.S. 9:2801 A(4).

**DECREE**

For the reasons stated herein, the trial court's judgment in affirmed in part as to the denial of the claim concerning the alleged liabilities of the community. In all other respects, the judgment is vacated and the matter is remanded to the trial court for further proceedings pursuant to the mandates of La. R.S. 9:2801 A(4).

<u>**AFFIRMED IN PART; VACATED IN PART;**</u>
<u>**REMANDED FOR FURTHER PROCEEDINGS**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. TRAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 6, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**24-CA-553**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
RICHARD J. RICHTHOFEN, JR. (APPELLEE)

**MAILED**
HOLLIS SHEPHERD (APPELLANT)
ATTORNEY AT LAW
2221 ST. CLAUDE AVENUE
NEW ORLEANS, LA 70117